# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 68

### APRIL TERM, A.D. 2013

### June 5, 2013

|  |  |
|---|---|
| IN THE MATTER OF THE UNEMPLOYMENT CLAIM OF SEAN A. RINGROSE: <br><br> STATE OF WYOMING, DEPARTMENT OF EMPLOYMENT, UNEMPLOYMENT INSURANCE COMMISSION, <br><br> Appellant (Respondent), <br><br> v. <br><br> LARAMIE COUNTY, WYOMING, <br><br> Appellee (Petitioner). | S-12-0222 |

*Appeal from the District Court of Laramie County*
The Honorable Peter G. Arnold, Judge

*Representing Appellant:*
> Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Brenda S. Yamaji, Assistant Attorney General. Argument by Ms. Yamaji.

*Representing Appellee:*
> Mark T. Voss, Laramie County Attorney and Sylvia Lee Hackl*, Deputy Laramie County Attorney, Cheyenne, Wyoming.

*Ms. Hackl withdrew as counsel for the Appellee on June 3, 2013.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1]   Sean A. Ringrose was terminated from his position as a patrol deputy for the Laramie County Sheriff's Department.  His initial application for unemployment benefits was denied, but after a contested case hearing, a Wyoming Department of Employment, Unemployment Insurance Division, hearing officer concluded he had not committed misconduct connected with his work and awarded benefits.  The Unemployment Insurance Commission upheld the hearing officer's decision, but, after Laramie County petitioned for judicial review, the district court reversed.  Applying the appropriate standard of review, we conclude substantial evidence was presented to support the agency's decision and, therefore, reverse and remand for entry of an order affirming the Commission's decision.

## ISSUE

[¶2]    The Commission presents the following issue for this Court's consideration:

> The Laramie County Sheriff's Department terminated Mr. Ringrose's employment with the Department following an incident that occurred while Mr. Ringrose was working private security.  After an evidentiary hearing, a hearing officer allowed unemployment benefits finding that Mr. Ringrose was discharged from his employment, but not for misconduct connected to his work.  The Unemployment Insurance Commission affirmed that decision.  The district court reversed the Commission's decision stating that it was not supported by substantial evidence.  Was the Commission's decision supported by substantial evidence?

Laramie County rephrases the issue:

> Whether the decision that Sean Ringrose was not discharged for misconduct related to his employment as a deputy sheriff was supported by substantial evidence.

## FACTS

[¶3]    Deputy Ringrose and Deputy Kenneth Cook[1] worked off-duty security at the Outlaw Saloon in Cheyenne starting the evening of Saturday, December 26, 2009, and

---

[1] In *Laramie County Sheriff's Dep't v. Cook,* 2012 WY 47, 272 P.3d 966 (Wyo. 2012), we affirmed the district court's reversal of the Sheriff's decision terminating Deputy Cook from his employment for events related to the same off-duty assignment.

continuing into the early morning hours of Sunday, December 27, 2009. Although Deputy Ringrose was in his department uniform, he was paid and supervised by the Outlaw Saloon.

[¶4] Sergeant Timothy Finch, an airman stationed at F.E. Warren Air Force Base, and Officer Russ Edwards, an off-duty Cheyenne Police Department officer, got into a fight in the bar. Deputy Ringrose did not see the fight, but a staff member asked that the men be removed from the bar. Deputy Ringrose escorted Officer Edwards outside, while Deputy Cook took charge of Sergeant Finch. Although it appeared to Deputy Ringrose that Officer Edwards was not the instigator of the fight, the officer remained angry and was cursing at Sergeant Finch. Deputy Ringrose told Officer Edwards he would call his watch commander if he did not settle down. Officer Edwards said to make the call, so Deputy Ringrose instructed Officer Edwards to remain where he was while he asked Deputy Cook, who was using his radio to request an ambulance for Sergeant Finch, to contact the watch commander. Ignoring Deputy Ringrose's instruction, Officer Edwards got into a car and left the bar. Deputy Ringrose did not take any photographs at the scene or follow-up at the hospital to determine Sergeant Finch's condition.

[¶5] Deputy Ringrose's typical work week at the Sheriff's Department was Wednesday through Saturday, so he was not scheduled to work until the following Wednesday. While Deputy Ringrose was off work on Monday and Tuesday, Deputy Cook told him he was writing a report about the Outlaw Saloon incident and Deputy Ringrose agreed to write a supplemental report. Deputy Ringrose's supervisor also contacted him and instructed him to write a report. On his first day back at work, Deputy Ringrose conducted interviews and prepared his report. His supervisor directed him to "hang on" to the report and continue his investigation because he had not been able to contact some of the witnesses. Deputy Ringrose did as requested and submitted his final report the next day.

[¶6] Lieutenant Linda Gesell started an administrative investigation of Deputy Ringrose after learning of the incident. He was suspended and Lieutenant Gesell recommended he be terminated for violating department policy. After a disciplinary hearing, the Sheriff terminated Deputy Ringrose from employment with the department.

[¶7] Deputy Ringrose applied for unemployment insurance benefits, and the Unemployment Insurance Division initially denied his request. After a contested case hearing, the hearing officer awarded benefits finding that although he had been discharged, it was not for misconduct connected with his work. The Commission affirmed the hearing officer's decision after Laramie County appealed. Laramie County filed a petition for review, and the district court reversed the Commission's decision, concluding it was not supported by substantial evidence. The Commission appealed to this Court.

2

# STANDARD OF REVIEW

[¶8]   On appeal from a district court's review of an administrative agency's decision, we do not give any deference to the district court's decision. *Dutcher v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2010 WY 10, ¶ 9, 223 P.3d 559, 561 (Wyo. 2010); *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2011):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> > (i) Compel agency action unlawfully withheld or unreasonably delayed; and
> >
> > (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
> >
> > > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> > >
> > > (B) Contrary to constitutional right, power, privilege or immunity;
> > >
> > > (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> > >
> > > (D) Without observance of procedure required by law; or
> > >
> > > (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶9]   In accordance with § 16-3-114(c), we review the agency's findings of fact by applying the substantial evidence standard. *Dale,* ¶ 22, 188 P.3d at 561. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.,* 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) (citation omitted). Findings of fact are supported by substantial evidence when we can discern a rational premise for those findings from the evidence preserved in the record. *Id.* "We give great deference to the Commission's findings of fact in light of its expertise and extensive experience in employment matters." *Weidner v. Life Care Centers of America,* 893 P.2d 706, 710 (Wyo. 1995). An agency's conclusions of law are reviewed *de novo. Moss v. State ex rel. Wyo. Workers' Safety &*

3

*Comp. Div.,* 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010); *Dale,* ¶ 26, 188 P.3d at 561-62.

## DISCUSSION

[¶10] Pursuant to Wyo. Stat. Ann. § 27-3-311(f) (LexisNexis 2011), a claimant is disqualified from unemployment benefits if he commits work-related misconduct:

> (f) **An individual shall be disqualified from benefit entitlement** beginning with the effective date of an otherwise valid claim or the week during which the failure occurred, until he has been employed in an employee-employer relationship and has earned at least twelve (12) times the weekly benefit amount of his current claim for services after that date, **if the department finds that he was discharged from his most recent work for misconduct connected with his work.**

(Emphasis added.)

[¶11] In unemployment compensation cases, we review the Commission's decision. *Koch v. Dep't of Employment, Unemployment Ins. Comm'n,* 2013 WY 12, ¶ 15, 294 P.3d 888, 892 (Wyo. 2013). In this case, the Commission affirmed the hearing officer's decision awarding benefits to Deputy Ringrose and adopted her findings of fact, statement of law and conclusions. The hearing officer's order included two distinct reasons for ruling Deputy Ringrose was not disqualified – 1) the incident at issue was not connected to his work at the Sheriff's Department, and 2) Deputy Ringrose's actions did not amount to misconduct under Wyoming unemployment compensation law.

[¶12] We start with the ruling that Deputy Ringrose did not commit misconduct. In *Safety Medical Services, Inc. v. Employment Security Comm'n,* 724 P.2d 468, 472-73 (Wyo. 1986), we approved the following definition of "misconduct" under § 27-3-311:

> Misconduct under the Wyoming Employment Security Law means generally an act of an employee which indicates a disregard of (1) the employer's interests or (2) the commonly accepted duties, obligations and responsibilities of an employee. This would include carelessness or negligence of such degree or recurrence as to reveal willful intent or an intentional disregard of the employer's interests or of the employee's duties and obligations to his employer. Inefficiency or failure in good performance as the result of inability or incapacity; ordinary negligence in isolated

4

instances or good faith errors in judgment or discretion are not deemed to be misconduct within the meaning of the Law.

*See also*, *Aspen Ridge Law Offices, P.C. v. Wyo. Dep't of Employment,* 2006 WY 129, ¶ 16, 143 P.3d 911, 917 (Wyo. 2006); *Wyo. Dep't of Employment, Unemployment Ins. Comm'n v. SF Phosphates, Ltd.,* 976 P.2d 199, 201 (Wyo. 1999). A violation of a company policy or rule may establish the requisite "misconduct" provided the employee "intentionally acted contrary to [his] responsibility to perform [his] duties or willfully and *intentionally* disregarded known employer interests." *Safety Medical Services,* 724 P.2d at 473 (emphasis in original).

[¶13] Lieutenant Gesell testified on behalf of the Sheriff's Department at the unemployment hearing. She stated Deputy Ringrose was suspended and ultimately terminated because he violated Department Policies 3.04, 4.13 and 7.03 by failing to file a report without being ordered to do so, take photographs of either Officer Edwards or Sergeant Finch, and follow up at the hospital to determine the seriousness of Sergeant Finch's injuries.[2]

[¶14] According to the hearing officer's decision, Policy No. 03.04 stated, in relevant part:

> A. The Laramie County Sheriff's Department does not provide its employees with an all-inclusive list of prohibited behavior that may result in discipline. The following list represents examples of conduct that may result in disciplinary action. The list is intended to provide examples of such conduct that may result in discipline, but is not intended to be all inclusive:
> . . . .
> 2. Failure to perform assigned duties.
> . . . .
> 10. Unsatisfactory work performance.

Policy No. 04.13 stated, in pertinent part:

> B. Deputies are responsible for their own case management. . . .
> C. The following types of crimes/incidents require a written

---

[2] Lieutenant Gesell also suggested that Deputy Ringrose's failure to issue citations for criminal violations committed in his presence, including breach of the peace and interference with a peace officer, and his failure to "pat down" Officer Edwards were violations of department policy and justified his termination. However, the hearing officer did not discuss these grounds in her decision, and Laramie County does not argue on appeal that they establish misconduct under the statute.

report:

. . .

2. All misdemeanors involving violence . . . .

The relevant part of Policy No. 07.03 stated:

> A. Off-duty deputies are deputy sheriffs of the Laramie County Sheriff's Department first and foremost, and secondarily employees of their off-duty employer. In any situation where the law enforcement function of the deputy conflicts with the desires of the off-duty employer, the off-duty deputy will perform his/her duties as required by law and Department policy and procedure.

[¶15] Laramie County's first basis for terminating Deputy Ringrose was that he did not file a report until ordered to do so. The hearing officer concluded Deputy Ringrose submitted a report to his supervisor in a timely fashion. In *Cook,* we held that the language of Policy 4.13 did not establish a violation when a deputy simply does not write a report until ordered to do so. A violation occurs only if a report is not submitted by the last workday of the deputy's workweek. *Id.,* ¶ 19, 272 P.3d at 972. Deputy Ringrose prepared and filed his report before the end of his workweek and did not, therefore, violate the policy even if we accept Lieutenant Gesell's testimony that he would not have written it without being ordered to do so. Accordingly, there was substantial evidence that he did not commit misconduct.

[¶16] Lieutenant Gesell also faulted Deputy Ringrose for failing to take photographs at the scene or follow up with Sergeant Finch at the hospital. The hearing officer concluded that, even if those failures were violations of the department's policies, they did not amount to misconduct under the unemployment statute. The hearing examiner remarked that the failure to take photographs was, instead, a good faith error in judgment or discretion.

[¶17] In other cases where we have determined that misconduct was proven pursuant to the unemployment statute, there was evidence of a known obligation or responsibility and a willful and intentional failure to comply. For example, in *Koch,* ¶ 21, 294 P.3d at 894, the evidence established that shoveling snow was an "outstanding expectation" of the employee's job duties, the employee was aware of the duty, and he admitted that he did not perform that task on the day before he was terminated. On the other hand, when the evidence demonstrates the employee did not willfully and intentionally violate a known work responsibility, we have consistently held that the employee did not commit misconduct justifying a denial of unemployment insurance benefits. To illustrate, an employee's inadvertent violation of a company policy prohibiting visitors from leaving the mine check-out station without being logged in did not amount to misconduct in

6

*Safety Medical Services,* 724 P.2d at 473, and a law firm employee's failure to complete an affidavit in a timely fashion was an isolated instance of ordinary negligence which did not constitute misconduct in *Aspen Ridge,* ¶ 18, 143 P.3d at 917-18. Even seemingly more egregious occurrences have been considered good faith errors in judgment rather than misconduct. In *SF Phosphates,* 976 P.2d at 202-03, the employee was entitled to unemployment benefits even though he made threatening statements against a former manager.

[¶18] Laramie County does not direct us to any evidence which establishes that Deputy Ringrose intentionally acted contrary to his employment responsibilities or willfully and intentionally disregarded known employer interests. *Safety Medical Services,* 724 P.2d at 473. Policy No. 7.03 required an off-duty deputy to perform his duties required by law and department policy and procedure; however, we are not directed to any evidence that department policy or procedure specifically required that photographs be taken at the scene or a deputy check on a victim's condition at the hospital. Furthermore, there is no showing that Deputy Ringrose was aware of any such requirements. Consequently, his failure to do so was neither willful nor intentional, but was, at most, a good faith inadvertent error. On this record, there was substantial evidence to support the Commission's decision that Deputy Ringrose was not terminated for misconduct so as to disqualify him for unemployment benefits.[3]

[¶19] In order for a claimant to be disqualified from benefits, he must have committed misconduct connected with his employment. Even if we were to accept Laramie County's argument that Deputy Ringrose was acting in the course of his employment with the Sheriff's Department during the incident at the Outlaw Saloon, he would still be entitled to benefits because we agree with the Commission's decision that he did not commit misconduct. We do not, therefore, need to separately consider the course of employment rationale.

[¶20] The district court's decision is reversed and remanded for entry of an order affirming the Commission's decision.

---

[3] Laramie County also argues that Deputy Ringrose committed misconduct at other times during his tenure with the Sheriff's Department and those instances disqualify him from unemployment benefits. Lieutenant Gesell's report included a description of some prior disciplinary actions involving Deputy Ringrose; however, she did not state at the hearing that the other instances formed a basis for his termination or, for that matter, even mention them. Given Lieutenant Gesell did not testify the prior occurrences were part of the grounds for Deputy Ringrose's dismissal, we will not consider them in determining whether the evidence established that he was discharged for misconduct connected to his work. *See Cook,* ¶ 20 n.1, 272 P.3d at 973 n.1 (addressing similar argument).